AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>iPhone 13 Pro Max IMEI# 358677230863865<br>Seized as FP&F No. 2023252100004201,<br>Line Item 0001 | Case No.  '23 MJ01649 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC secs. 841, 846 | Distribution of Controlled Substances, PWID, Conspiracy |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Kiersten Deutsch, incorporated herein by reference.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Kiersten Deutsch*
Applicant's signature

Special Agent Kiersten Deutsch, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   05/08/2023  

*[Judge's signature]*
Judge's signature

City and state:   San Diego, California     Hon. Bernard G. Skomal, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Kiersten Deutsch, being duly sworn, hereby state as follows:

## I.

## INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic devices:

> iPhone 13 Pro Max
>
> IMEI# 358677230863865
>
> Seized as FP&F No. 2023252100004201, Line Item 0001
>
> ("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 841 and 846, as further described in Attachment B. The requested warrant relates to an investigation of Manuel ROBLES III, and others known and unknown, for criminal violations of the offenses identified above. The **Target Device** is currently in the custody of Homeland Security Investigations-ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## II.

## EXPERIENCE AND TRAINING

3. I have been employed as a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations since May 2019. I am currently a Task Force Officer with the Drug Enforcement Administration, in the Imperial County District Office (ICDO). I am a graduate of the Federal Law Enforcement Training Center, successfully completing the

Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training program. Prior to being employed by HSI, I received my Master's Degree in Law Enforcement and Justice Administration from Western Illinois University and my Bachelor's degree in Justice Studies and Criminal Justice from James Madison University. During my tenure with DEA and HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

  4. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7) and am empowered to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities regarding violations of Title 21. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration and ICE.

  5. As an HSI Special Agent, I have participated in and conducted investigations of violations of various Federal and State criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit narcotics offenses, importation of controlled substances, conspiracy to import, possess, and distribute controlled substances, all in violation of federal narcotics laws. These investigations resulted in arrests of individuals who imported, smuggled, received, and distributed controlled substances including cocaine, heroin, methamphetamine, and fentanyl. These investigations also resulted in arrests of individuals involved in smuggling bulk U.S. currency from the United States to Mexico. Through these investigations, my experience, and training, as well as discussing

the methods and practices of narcotics traffickers with numerous law enforcement officers and confidential sources, I have become familiar with the operations of drug trafficking organizations in the United States and Mexico.

6. I have participated in "buy-walk" and "buy-bust" operations. I have conducted telephone toll analysis, records research, physical and electronic surveillance, and have participated in wiretap investigations. I have used telephone records and bills, financial records, and other documents to identify drug trafficking organization co-conspirators. I have also participated in debriefings of many individuals who were arrested and later cooperated with law enforcement.

7. I have participated in investigations that have resulted in the identification of co-conspirators through the use of telephone records, financial records, photographs, and surveillance. I have participated in the debriefings of some of those individuals who later agreed to cooperate. Furthermore, I have participated in debriefings of confidential sources, who have successfully infiltrated organizations for the purpose of intelligence gathering. I have participated in surveillance operations of illegal narcotic activity. I have participated in monitoring of court-authorized interceptions of wire and electronic communications (including monitoring authorized under Title III), and I have participated in related surveillance connected to such interceptions.

8. Based upon my training and experience as an HSI Special Agent, consultations with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug traffickers often work in concert utilizing cellular/mobile telephones because they are mobile and provide instant access to calls, text messaging capabilities, web, and voice messages.

    b. Drug traffickers often use cellular/mobile telephones in order to arrange the importation and/or transportation of their illegal cargo.

c.  Drug traffickers often use cellular/mobile telephones in order to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d.  Drug traffickers often use cellular/mobile telephones in order to provide instructions and synchronize an exact drop off and/or pick up time between load drivers and stash house operators (or others) of their illegal cargo.

e.  Drug traffickers often use cellular/mobile telephones to notify or warn accomplices of law enforcement activity, including the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

9.  Based upon my training, experience, consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.  Specifically, searches of cellular telephones of individuals involved in the importation and/or transportation of narcotics may yield evidence:

a.  tending to indicate efforts to import and/or distribute federally controlled substances;

b.  tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the importation and/or distribution of federally controlled substances;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation and/or distribution of federally controlled substances;

    d.    tending to identify travel to or presence at locations involved in the importation and/or distribution of federally controlled substances, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or person(s) with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III.
## FACTS SUPPORTING PROBABLE CAUSE

10.    Since late November 2020, HSI has been investigating a cross-border drug smuggling and trafficking organization that has been smuggling substantial quantities of methamphetamine and other drugs into the United States, within the Imperial Valley, and distributing it in California and other cities throughout the United States. As part of the investigation, investigators identified Manuel ROBLES III as a courier and distributor of bulk quantities of methamphetamine.

11.    In April 2021, installed a discreet pole camera at a residence in Heber, California, where Fernando BLANCO resided and was identified as a stash house operator. On the surveillance, investigators observed several cars arrive and park inside the attached garage or in the drive-way, and saw BLANCO and others unloading items from them. From their training and experience, investigators believe that on these occasions, BLANCO was unloading packages of drugs from these cars. Investigators also saw BLANCO loading duffel bags into other vehicles that came to his residence; on more than one occasion, investigators followed these vehicles as they left the residence and effected traffic stops, seizing the bags and finding bulk quantities of methamphetamine in them.

12.    On April 26, 2021, investigators observed, via pole camera, BLANCO maneuver a previously identified drug-laden vehicle, a Ford Fusion, onto the driveway of his residence. Over the course of surveillance, investigators observed BLANCO getting in

5

and out of the vehicle, and then removing a black duffel bag from the vehicle and placing it inside of a black storage bin. BLANCO was then seen moving the vehicle and parking on the street in front of the residence. BLANCO then placed numerous outgoing calls to a domestic phone number ending in -0446 (the "0446 Number").

13. BLANCO was observed removing the black bags from the Ford Fusion and into a GMC Sierra. BLANCO then departed the location and drove the GMC Sierra to an ARCO Gas Station in Heber, California, where he met with a male, later identified as ROBLES. ROBLES was driving a Honda Accord. Investigators observed ROBLES and BLANCO talking, but did not observe an exchange. Investigators maintained surveillance on ROBLES and followed him to 418 West Sixth Street, Holtville, CA. Vehicle registration information of the Honda Accord showed it was registered to ROBLES at this address. Further information from the Imperial Irrigation District, a local municipal service, listed ROBLES at this address, with the 0446 Number as his phone number. ROBLES parked the vehicle and went inside the residence.

14. At about 5:15 p.m., investigators observed ROBLES and an unidentified male open the trunk of the Honda Accord, where he and ROBLES grabbed two duffel bags from the trunk of the vehicle and took them inside ROBLES' residence. Shortly after, ROBLES returned outside and place the two duffel bags, which appeared to still be full, back into the trunk of the Honda Accord. Investigators believe BLANCO provided these two duffel bags to ROBLES earlier at the ARCO gas station.

15. At approximately 9:33 p.m., BLANCO arrived at ROBLES's residence in the GMC Sierra, where ROBLES received a box from the GMC Sierra and put it in the trunk of the Honda Accord. ROBLES returned inside the residence and agents-maintained surveillance throughout the night.

16. The following day, April 27, 2021, at approximately 9:55 a.m., ROBLES was observed exiting his residence, entering the Honda Accord, and departing from the residence. Agents maintained surveillance of ROBLES and the Honda Accord as it drove and parked near 640 East 3d Street, Holtville, CA, where ROBLES was observed talking

6

to an unknown male through the passenger window of the Honda Accord, but no exchange was observed. ROBLES then drove to 110 West 5th Street, Holtville, CA and parked outside HC Tax Service. ROBLES was observed entering the business with an envelope in hand, and agents lost visual of ROBLES, but maintained surveillance of the Honda Accord.

17. Approximately one hour later, agents confirmed ROBLES was no longer in the business, however the Honda Accord remained parked outside. Agents maintained surveillance of the vehicle throughout the remainder of the day and through the night.

18. On April 28, 2021, agents continued to maintain surveillance on the Honda Accord through the duration of the morning and observed no movement of the vehicle. Later that day, investigators had a K-9 conduct a sniff of the vehicle, which yielded a positive alert to the trunk. The Accord was towed to the El Centro Border Patrol Sector located in Imperial, California, for further inspection.

19. Further inspection of the vehicle revealed two black duffel bags and one Pittsburgh Automotive Aluminum Jack Box, which all contained vacuumed-sealed packages containing a white crystal-like substance. A total of 50 packages of were discovered, which tested positive for the properties and characteristics of methamphetamine. The total combined weight of methamphetamine was 23.88 kilograms.

20. On February 9, 2023, ROBLES was indicted by a federal grand jury in the Southern District of California for violations of 21 U.S.C. § 841, 846, and 18 U.S.C. § 2. On February 10, 2023, an arrest warrant was issued for ROBLES. On March 14, 2023, Homeland Security Investigations (HSI) Calexico Special Agents executed the arrest warrant for ROBLES, which resulted in the arrest of ROBLES and subsequent seizure of his cellphone, the **Target Device**.

21. Given the foregoing, investigators believe a search of the **Target Device** will yield evidence of how ROBLES, and others have been participating in trafficking activity. Specifically, I seek authority to search the **Target Device** from January 28, 2021, through April 28, 2021, the date of the seizure of drugs from ROBLES's Accord.

## IV.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

22. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all facts and opinions set forth in this affidavit, I know that:

    a. Individuals involved in drug distribution activity use cellular telephones and electronic communication devices to conduct their criminal activities. An examination of the **Target Device** will enable investigators to establish further evidence of drug distribution and importation, and co-conspirators. That evidence is, I believe, likely to include information pertinent to importation of controlled substances, distribution of controlled substances, recoupment of proceeds from trafficking, and efforts to move those proceeds over the order to Mexico.

    b. Cellular telephones and electronic communication devices (Tablets, I-Pads, etc.) are capable of storing many different types of data that are invaluable to investigators and could be evidence of criminal conduct. This data, sought pursuant to the requested search warrants, consists of the contents of the cell phones' or electronic communication devices' memory, including: stored names and telephone numbers in the memory, "phonebook" or list of contacts, and/or speed dial functions of the phones; phone numbers dialed for the most recent outgoing or "sent" calls of the telephones, along with date and time of call data; phone numbers dialing the telephones for the most recent incoming "received" calls, along with date and time of the call data; phone numbers dialing the telephone for the most recent "missed" calls, along with the date and time of call data; GPS navigation information; internet searches and websites viewed; and deleted data.

    c. Drug traffickers commonly use cellular telephones, blackberries, PDAs, electronic communication devices, other personal handheld electronic devices, and laptop and desktop computers to communicate with, among others, their customers, their suppliers, and other criminal associates, and to store phone

numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence of their drug trafficking activities. Drug traffickers also commonly store records of the business of distributing and selling drugs on telephones, computers, and other forms of digital media.

d. In addition to their use of computers and digital media, persons involved in drug trafficking activity often use mobile phones in furtherance of these activities. When used in this manner, the mobile phones typically contain data constituting evidence of these activities. Many current mobile phones are sophisticated computing devices and are capable of performing many of the same functions as computers. They are commonly used in furtherance of illicit activity in the same manner as computers.

23. Here, in light of the investigation to date, I seek authority to search the **Target Device** from January 28, 2021, through April 28, 2021. Surveillance of ROBLES in this investigation indicate that he has been a fairly active participant in drug trafficking activity.

## V.
## PROCEDURE FOR ELECTRONICALLY STORED INFORMATION AS TO ANY CELLULAR TELEPHONES

24. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive

9

equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, agents will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and the memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## VI.

## PRIOR ATTEMPTS TO OBTAIN EVIDENCE

27. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## VIII.

## CONCLUSION

28. Based upon my experience and training, consultation with other law enforcement officers experienced in drug investigations, and all the facts and opinions set forth in this affidavit, I believe that probable cause exists to conclude that the **Target Device**, as further described in Attachment A, incorporated herein, was utilized to facilitate

violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963. Furthermore, I believe there is probable cause to conclude that the **Target Device** contain stored data that constitutes evidence, fruits, and instrumentalities of such violations, and I respectfully request warrants be issued authorizing a search for and seizure of that data, as further described in Attachment B, incorporated herein. For the reasons provided, I seek authority to search the **Target Device** from January 28, 2021, through April 28, 2021.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Kiersten Deutsch*
Special Agent Kiersten Deutsch
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 5.1 this 8th day of May, 2023.

The Honorable Bernard G. Skomal
United States Magistrate Judge

**Attachment A**

*Item to be Searched*

The item to be searched is as follows:

>iPhone 13 Pro Max
>IMEI# 358677230863865
>Seized as FP&F No. 2023252100004201, Line Item 0001
>("**Target Device**")

The **Target Device** is currently in the custody of Homeland Security Investigations-ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

# Attachment B

## Items to be Seized

Authorization to search the **Target Device**, described in Attachment A, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, between the dates of January 28, 2021, through April 28, 2021:

    a.    tending to indicate efforts to import and/or distribute federally controlled substances;

    b.    tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the importation and/or distribution of federally controlled substances;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation and/or distribution of federally controlled substances;

    d.    tending to identify travel to or presence at locations involved in the importation and/or distribution of federally controlled substances, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or person(s) with control over or access to, the **Target Device**; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.